FILED & JUDGMENT ENTERED
Steven T. Salata

January 18 2017

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| **CHRISTOPHER LAWRENCE BELLER,** ) | Chapter 13 |
| ) | Case No. 15-30204 |
| Debtor. ) | |
| _____) | |
| ) | |
| **FIRST NATIONAL BANK OF** ) | |
| **OMAHA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adversary Proceeding |
| v. ) | No. 15-03088 |
| ) | |
| **CHRISTOPHER BELLER,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING**
**JUDGMENT TO THE DEFENDANT**

This dischargeability action came before the court for trial on March 16, 2016. The Plaintiff, First National Bank of Omaha, alleges that the Defendant, Christopher Beller, is indebted to the Plaintiff in the amount of $29,702.86 pursuant to a credit card agreement with the Plaintiff and that the debt

is nondischargeable under 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code. For the reasons set forth below, the court concludes that the Plaintiff has failed to meet its burden under § 523(a)(2)(A) and determines that the debt owed by the Defendant to the Plaintiff is dischargeable.

**FINDINGS OF FACT**

The relationship between the Plaintiff and the Defendant began in 1996 when the Defendant applied for and was granted a credit account with the Plaintiff. Between 1996 and the summer of 2014, the Defendant regularly charged various amounts to the account and always paid off the full balance within 30 days.

In August 2014, the account carried a balance of $14,218.92, but the Defendant only made a payment of $7,000 and carried a balance past 30 days for the first time. In September 2014, the Defendant carried a balance of $8,920.88. He made purchases of $19,259.65 but only made a $200 payment. These purchases caused the Defendant to exceed his $20,000 credit limit, and no further payments were made on the account. The Plaintiff argues that the Defendant's credit account history shows that the Defendant had decided to defraud the Plaintiff when he incurred charges on his credit card in the fall of 2014, but there is more to this story.

In 2012, the Defendant and his wife hired Russell Smith to build a home on land that they owned. They paid an upfront

retainer of $125,000 to the builder, who they later learned did not have a license. When they inquired about the significant delay in the building of their home several months later, they discovered that the builder spent the retainer on other projects and his personal expenses.

To finance the home, the Defendant's wife took out a construction loan with Branch Banking and Trust ("BB&T"). The terms of the agreement called for BB&T to disburse funds based on the progress of the work on the home. The builder, however, repeatedly underestimated the cost of the various stages of the construction, and, as a result, the draws paid by BB&T were far less than the amount that the builder invoiced for the related stages of work. The Defendant and his wife were required to pay the difference to keep the project moving and used their credit cards, including the Defendant's credit card with the Plaintiff, to do so.

The Defendant and his wife subsequently visited two separate attorneys to discuss their problems with the builder. The Defendant and his wife were advised by both attorneys to continue working with the builder because a lawsuit would be fruitless. Because of this advice and the retainer previously paid to the builder, the Defendant kept working with the builder.

In addition to the issues with the builder, Wells Fargo filed a lawsuit against the Defendant related to a property that he owned in South Carolina. The Wells Fargo lawsuit led to a deficiency judgment of $202,655 against the Defendant in October 2013. The Defendant did not hear about the judgment again until he received a letter from Wells Fargo in July 2014 that indicated that the judgment would be domesticated in North Carolina and demanded payment.

Eventually, Wells Fargo filed a Form 1099-C with the Internal Revenue Service, leaving the Defendant with a substantial tax debt. The Defendant consulted a tax attorney who subsequently referred him to a South Carolina attorney to file a lawsuit against Wells Fargo concerning the collection activities and the 1099-C. The Defendant was also referred to his eventual bankruptcy attorney, Sean Dillenbeck, in early September 2014 as a settlement strategy to convince Wells Fargo that bankruptcy was an option. The Defendant's goal at the time was to use the threat of bankruptcy as a negotiating tool in order to work out a settlement with Wells Fargo.

In January 2015, the Defendant's attorneys informed him that the lawsuit in South Carolina would be unsuccessful, and the Defendant decided to file a Chapter 13 case to deal with the tax debt and the Wells Fargo judgment. He commenced this bankruptcy case on February 16, 2015.

4

On May 15, 2015, the Plaintiff filed this adversary proceeding.  Prior to filing its complaint, the Plaintiff did not attend the Defendant's § 341 meeting, did not request an examination of the Defendant pursuant to Federal Rule of Bankruptcy Procedure 2004, and did not object to confirmation of the Defendant's Chapter 13 plan.  After filing this adversary proceeding, the Plaintiff did not take the Defendant's deposition.

**CONCLUSIONS OF LAW**

The Bankruptcy Code excludes certain types of debt from a Chapter 13 discharge.  11 U.S.C. § 1328(a).  One type of debt excepted from a Chapter 13 discharge are debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A); see § 1328(a)(2) (excluding debts described by § 523(a)(2) from discharge under Chapter 13).

The court must find that the traditional elements of fraud are present for a claim under § 523(a)(2)(A) to prevail. MBNA Am. v. Simos (In re Simos), 209 B.R. 188, 191 (Bankr. M.D.N.C. 1997).  The elements include (1) a representation; (2) that the debtor knew was false when it was made; (3) made with intent to deceive the creditor; (4) relied on by the creditor; (5) that

5

causes an injury to the creditor.[1] Id. (citing In re Valdes, 188 B.R. 533, 535 (Bankr. D. Md. 1995); In re Carrier, 181 B.R. 742, 746 (Bankr. S.D.N.Y. 1995)); see Dean v. Brown (In re Brown), Nos. 11-3223, 11-32223, 2013 WL 5550122, at *2 (Bankr. W.D.N.C. Oct. 8, 2013) (using similar elements to determine whether a plaintiff could prove a fraud claim (quoting Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 94 (2010))). The Plaintiff has the burden of showing each element of fraud by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 291 (1991); First Nat'l Bank of Md. v. Stanley (In re Stanley), 66 F.3d 664, 667 n.4 (4th Cir. 1995); Brown, 2013 WL 5550122, at *4. At trial, the Defendant conceded that a representation was made,[2] that the Plaintiff suffered an injury, and that the Plaintiff reasonably relied on the representation, so the court must determine whether the Defendant knew that the representation was false and whether the Defendant intended to

---

[1] Although there are subtle differences between the elements for fraud under North Carolina law and the elements traditionally used in this circuit to determine dischargeability related to fraud, see Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 134 (4th Cir. 1999) (requiring "(1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation" to establish a claim of nondischargeabilty pursuant to § 523(a)(2)(A)), and Simos uses the North Carolina elements, the parties argued the Simos elements at trial. The minor differences between the Simos and Biondo elements for fraud would not change the outcome of this adversary proceeding.

[2] While the use of a credit card is not a direct representation between a debtor and a creditor, a majority of courts hold that that the use of a credit card is an implied representation that the debtor intends to pay the debt incurred and is sufficient for the purposes of § 523(a)(2)(A). Simos, 209 B.R. at 191 (citing Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1285 (9th Cir. 1996); In re Carrier, 181 B.R. 742, 747 (Bankr. S.D.N.Y. 1995); In re Faulk, 69 B.R. 743 (Bankr. N.D. Ind. 1986)).

deceive the Plaintiff.[3] A representation would be sufficient to show fraud under these elements if the Defendant knew "the representation to be false when making it" or "made the representation recklessly without any knowledge of its truth and as a positive assertion."[4] Fulton v. Vickery, 326 S.E.2d 354, 358 (N.C. Ct. App. 1985) (citing Odom v. Little Rock & I-85 Corp., 261 S.E.2d 99 (N.C. 1980)). If a debtor does not intend to repay a credit card debt at the time that she incurs the debt, the debt is not dischargeable; "[h]owever, it is quite another matter where a person in financial distress incurs indebtedness before realizing that his or her financial condition is hopeless and that bankruptcy is dictated by the circumstances which exist at the time of such realization." Simos, 209 B.R. at 191–92. The representation made by a debtor in this context is that he has the intent to repay the debt and is not that he has the financial means to repay the debt. Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1285 (9th Cir. 1996).

After reviewing all of the evidence presented at trial, particularly the testimony of the Defendant, the court holds

---

[3] Analyzed under the Biondo elements for fraud, the Defendant conceded the last three elements and contested whether the Defendant made a fraudulent misrepresentation.

[4] Under the Biondo elements, the Defendant would have made a fraudulent misrepresentation if he knew his representation was false or it was made recklessly while the Defendant did not know whether it was true or false. Visotsky v. Woolley (In re Woolley), 145 B.R. 830, 834 (Bankr. E.D. Va. 1991) (citing Birmingham Tr. Nat'l Bank v. Case, 755 F.2d 1474, 1476 (11th Cir. 1985); In re Taylor, 514 F.2d 1370, 1373 (9th Cir. 1975)).

7

that the Plaintiff did not carry its burden to show that the representation made by the Defendant by using his credit card was false when made and that the Defendant intended to deceive the Plaintiff.[5] The Plaintiff attempted to show the court that the Defendant incurred the charges in question in bad faith while planning to discharge the debt in bankruptcy, which would be sufficient for fraud. The totality of the circumstances as shown by the evidence at trial, however, shows that the Defendant (like many debtors) may have been overly optimistic in failing to realize that his financial situation was hopeless, but it does not show that the Defendant defrauded the Plaintiff.

The Defendant, as the Plaintiff acknowledges, had a long and noncontroversial borrowing history with the Plaintiff. In 2012, the Defendant and his wife decided to build a home and ran into trouble with a home builder who consistently underestimated costs and apparently used the funds intended for the Defendant's project for other personal uses. When the construction loan draws were not sufficient to pay for the construction, the Defendant used his credit cards to make up the difference. The Defendant consulted attorneys about taking legal action against the home builder but was advised that his best course of action was to continue working with the builder due to the sunk cost

---

[5] If the parties had argued the <u>Biondo</u> elements for fraud, the court would hold that the Plaintiff failed to show that the Defendant made a fraudulent misrepresentation.

8

and the lack of likelihood of success in court. At around the same time, Wells Fargo decided to domesticate and pursue collection of a large judgment against the Defendant and temporarily cancelled the debt, leading to tax problems for the Defendant. The Defendant consulted various attorneys, including his eventual bankruptcy attorney, in the course of trying to deal with Wells Fargo. In January 2015, several months after the Defendant's last charge on his account with the Plaintiff, the Defendant's attorneys advised him that a lawsuit against Wells Fargo would not be successful. When the Defendant realized, perhaps belatedly, that the financial problems related to the home construction and the Wells Fargo judgment were insurmountable outside of bankruptcy, he filed his bankruptcy case. There is no evidence that the Defendant at any time incurred debt to the Plaintiff while simultaneously intending to file bankruptcy and to seek to discharge the debt.

On a superficial level, the court understands why the Plaintiff viewed the Defendant's acts in incurring a significant debt shortly before filing bankruptcy as fraudulent; however, there is more to this situation below the surface, and the Plaintiff did not bother to fully investigate the facts until the trial of this matter. If the Plaintiff had questioned the Defendant at his § 341 meeting, sought an examination of the Defendant pursuant to Federal Rule of Bankruptcy Procedure 2004,

9

or deposed the Defendant as part of this adversary proceeding, the Plaintiff might have recognized that there was an explanation for the situation that did not involve fraud. Instead, the Plaintiff filed its complaint and brought this matter to trial, where it asked the court to focus on its surface observations and ignore the specific evidence that shows a non-fraudulent explanation. The court must decline the Plaintiff's invitation and determine that the Plaintiff failed to show that its claim should be deemed nondischargeable.

## CONCLUSION

The evidence offered at trial shows that the Defendant realized too late that his financial situation had become hopeless and overextended his debts with his various creditors due to his belief that he would be able to resolve all of his liabilities. The Plaintiff failed to show that the Defendant intended to defraud it when he used the credit card. As the Plaintiff failed to meet its burden under 11 U.S.C. § 523(a)(2)(A), the court denies the relief sought and deems that the debt owed by the Defendant to the Plaintiff is dischargeable.

**SO ORDERED.**

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court